IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TITUS HENDERSON,

                Plaintiff,

v.

DYLAN RADTKE, JOHN KIND, MIKE DONOVAN,
DAVID BROOKS, J. PERTTU, ALLEN DEGROOT,
SGT. MATUSHAK, and C. FRUBROHT,

                Defendants.

OPINION and ORDER

21-cv-562-jdp

---

Plaintiff Titus Henderson, appearing pro se, is an inmate at Green Bay Correctional Institution. Henderson alleges that GBCI staff denied him Ramadan meals and access to Islamic reading materials and that staff threatened to kill him. I granted Henderson leave to proceed on claims under the First, Eighth, and Fourteenth Amendments and under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Defendants have filed a motion for partial summary judgment on exhaustion grounds. Dkt. 33. Henderson has filed a motion to sanction defendants or to hold a hearing on his allegations about prison staff blocking him from receiving mail or using the law library. Dkt. 24. I will grant most of defendants' motion for summary judgment, and I will deny Henderson's motion for sanctions in part, but I will have defendants respond to his allegations about law library access.

A. Exhaustion

    I granted Henderson leave to proceed on the following claims:

- First Amendment free exercise and RLUIPA claims against defendants Perttu, DeGroot, Donovan, and Brooks regarding the denial of Ramadan meals starting in 2019.

- First Amendment free exercise, RLUIPA, and equal protection claims against defendants Radtke and Kind regarding the denial of stapled Islamic publications.

- An equal protection claim for injunctive relief against Radtke in his official capacity regarding the denial of stapled publications by Black authors.

- Eighth Amendment claims against defendants Matushak and Frubroht for threatening to harm him.

Defendants have filed a motion for partial summary judgment on exhaustion grounds, contending that Henderson failed to properly exhaust all of his claims except his First Amendment and RLUIPA claims against defendants Donovan and Perttu for rejecting or ignoring Henderson's requests for Ramadan meal bags in 2020 and 2021. Dkt. 33.

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available administrative remedies before filing a lawsuit in federal court about prison conditions. 42 U.S.C. § 1997e(a). To comply with § 1997e(a), a prisoner must take each step in the administrative process, *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require," *Pozo*, 286 F.3d at 1025. To exhaust administrative remedies in Wisconsin, inmates must follow the Inmate Complaint Review System (ICRS) process as set forth in Wisconsin Administrative Code Chapter DOC 310. The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by the defendant. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

1.  **Ramadan meal bags**

Defendants concede that Henderson at least partially exhausted his claims about the denial of Ramadan meal bags in 2020 and 2021. Henderson also brings claims about denial of his bags in 2019; defendants say that Henderson failed to exhaust his grievances about that year's meals.

Henderson filed two grievances regarding his 2019 Ramadan meals. In mid-May, he filed grievance No. GBCI-2019-8775 alleging that non-defendants Retzlaff and Korpita took food from his Ramadan bag. Dkt. 35-2. But shortly thereafter, he wrote back saying "Dismiss Complaint, Issue Resolved." *Id.* at 8. By doing this, Henderson was following an instruction on the grievance form stating "Please write to the ICE if this issue is resolved before you receive an answer." *Id.* The examiner then rejected the grievance as moot and Henderson did not appeal that ruling. Defendants argue that a rejected complaint cannot exhaust a grievance. This is not quite correct: a rejection based on an inmate's failure to follow DOC procedures ordinarily means that a grievance does not properly exhaust a prisoner's remedies. But here, the issue appeared to have been successfully resolved informally pursuant to the DOC's procedures. See *Lindell v. Greff*, No. 19-C-827, 2021 WL 718237, at *3 (E.D. Wis. Feb. 24, 2021) (grievance rejected as moot rather than for failure to follow procedural rules supported denial of exhaustion-based summary judgment motion).

But regardless whether Henderson properly exhausted this particular dispute, this grievance does not exhaust his claims in this lawsuit because his dispute with Retzlaff and Korpita is not the subject of his 2019 Ramadan-meal claims. Rather, they are against Perttu, DeGroot, Donovan, and Brooks for rejecting or ignoring his requests for Ramadan meal bags.

3

On June 6, 2019, Henderson filed another grievance, No. GBCI-2019-10782, about being taken off the Ramadan list as retaliation for threatening to file a lawsuit. Dkt. 35-3. The parties agree that the complaint examiner returned the grievance to Henderson the next day to attempt informal resolution first (although neither party submits a document showing that). Henderson refiled the grievance on June 18. At that point it was rejected as untimely: inmates have 14 days from an incident to file a grievance. Wis. Admin. Code DOC § 310.07(2). Henderson's appeal was dismissed.

Defendants argue that this grievance could not have exhausted Henderson's claims because it was dismissed as untimely. I take Henderson to be arguing that his grievance was not actually untimely because (1) Ramadan ended on June 5; (2) officials made retaliatory remarks to him up through June 6; and (3) his attempt at informal resolution should have tolled the deadline. The problem with Henderson's first two arguments is that he didn't include that information in his grievance and he in fact stated otherwise: he described the "date of incident" as running through June 3, not June 5 or 6. Henderson's tolling argument also fails. My own review of the DOC grievance regulations shows that there is a tolling provision that Henderson failed to comply with. Under DOC § 310.07(5), the complaint examiner may return a grievance for various errors, including a prisoner's failure to attempt informal resolution first, and the examiner then "shall grant 10 days for receipt of the corrected complaint." Henderson refiled his grievance late, on the 11th day after it was returned to him. Otherwise, an examiner may accept a late grievance "for good cause" if the inmate requests to file a late grievance and states the reason for doing so. DOC § 310.07(2). Henderson did not do so here. I conclude that this grievance was not properly exhausted.

Henderson also cites *Turley v. Rednour*, 729 F.3d 645 (7th Cir. 2013), for the proposition that he did not have to properly file a grievance about 2019 events because he filed other grievances about Ramadan meals in 2020 and 2021. *Id.* at 650 ("Prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing."). But Henderson's unexhausted 2019 claims predate his exhausted 2020 and 2021 claims, and the claims from all three years do not stem from the same policy. So *Turley* does not apply to Henderson's 2019 Ramadan-meal claims. That means that I must dismiss his 2019 claims for his failure to exhaust his administrative remedies. That dismissal is without prejudice, *see Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004), but Henderson would likely find it impossible to file a proper grievance now because the relevant events happened so long ago and because prison officials already denied his most recent grievance as untimely.

As for Henderson's 2020 and 2021 grievances that defendants concede alerted prison staff to problems with his meal bags, defendants argue that Henderson should be limited to claims against Donovan and Perttu—and that claims against DeGroot and Brooks should be dismissed—because Henderson mentioned only Donovan and Perttu in those grievances. But Henderson wasn't required to name each defendant in his grievances. *See Jones v. Bock*, 549 U.S. 199, 219 (2007) ("[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."). And the substance of Henderson's grievances does not rule out the participation of DeGroot and Brooks, among others, in the alleged violations. So I will deny this portion of defendants' motion, and Henderson may continue with his 2020 and 2021 Ramadan-meal claims against DeGroot and Brooks.

### 2. Threats of harm

Henderson alleges that over the course of several days in August 2021, defendants Sergeant Matushak and C. Frubroht told Henderson that "they'll kill and starve Plaintiff Henderson before a civil action/criminal complaint cause[s] them to lose their jobs." Dkt. 1, at 14. Neither side submits any grievances directly about these statements. Henderson argues that he exhausted those claims because the threats "occurred during denial of Ramadan meals." Dkt. 36, at 6. If what Henderson means is that his Ramadan-meal-related grievances exhausted these claims, he is incorrect. It was his duty to provide prison officials notice of Matushak's and Frubroht's threats against him, and his meal-related grievances do not mention those threats. So I will dismiss these claims for failure to exhaust.

### 3. Prohibition of Islamic or Black-authored publications

Henderson alleges that in segregation status at GBCI, the DOC's purported policy prohibiting inmates from having publications with staples is applied only against Islamic publications or materials written by Black authors.

Defendants submit two of Henderson's grievances that they say were the only grievances arguably relevant to his claims. In grievance No. GBCI-2020-585, Henderson alleged that defendant Radtke censored a newsletter. Dkt. 35-6. That grievance was rejected as not containing sufficient information, and Henderson's appeal was denied. That grievance did not exhaust Henderson's claims.

In grievance No. GBCI-2020-2578, Henderson stated the "one issue" he was complaining about as: "DOC Sec. Dir. Fuchs imposing prior restraint on Black magazines as Phat Puff to justify denial, violate 1st Amend. Remove Phat Puff from Denial List." Dkt. 35-7, at 8. In the "details" section of the grievance, he added: "For five (5) years, DOC continue to

6

deny Phat Puff magazine. based on racism to censor + deny Black publications. The same racist censorship is not applied to white inmates magazines etc." *Id.* The institution complaint examiner rejected the grievance, stating that Henderson's "complaint presents only an abstract issue and offers no evidence to support the allegation," and noting that Fuchs had not been with the DOC for five years and that Henderson had never formally been denied a request for *Phat Puff* magazine. *Id.* at 2. The examiner rejected the grievance both for failing to provide sufficient information and on the ground that "the issue lacks merit or is otherwise frivolous." *Id.* Henderson appealed the rejection and his appeal was denied.

Henderson focuses on the examiner's language "lacks merit or is otherwise frivolous" to argue that the examiner actually decided his grievance on the merits. Henderson is correct that the examiner's rejection of his grievance (a status ordinarily reserved for resolving a grievance with procedural errors) might still serve to exhaust his grievance if that rejection was really one on the merits. *Maddox v. Love*, 655 F.3d 709, 721–22 (7th Cir. 2011) ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense."); *Lindell*, 2021 WL 718237, at *3.

But here the examiner explicitly rejected the grievance because Henderson sought to receive a magazine he had not previously been denied and he was complaining about a prison official, Fuchs, who hadn't worked at the DOC for five years. That wasn't a merit-based decision but rather a procedural one: Henderson's hypothetical complaint against a staff member no longer employed by the DOC was outside the scope of the DOC grievance process. Henderson did attempt to bolster his claim by stating that Black publications were forbidden while white publications were allowed, but his only evidence for that was his deficient claim

7

about *Phat Puff* and Fuchs, which reasonably didn't pass muster under the DOC grievance rules. *See* Wis. Admin. Code DOC § 310.10(6)(d) (grievance may be rejected if "[t]he inmate does not provide sufficient information to support" it). Because the examiner properly rejected this grievance, it cannot serve to exhaust Henderson's claims.

In his response brief, Henderson lists three other grievances that he argues exhausted his claims, but none of them properly exhausted his claims about Islamic or Black-authored publications. In grievance No. GBCI-2019-3917, Henderson alleged that Black inmates were denied access to the chapel and prison "property." Dkt. 40-1. In grievance No. GBCI-2019-15662, Henderson alleged that segregation inmates were prohibited from buying or receiving new books and other materials. Dkt. 40-2. In grievance No. GBCI-2020-1487, Henderson alleged that inmates were being barred from buying or receiving commercial photographs. Dkt. 40-3. Each of those grievances was rejected for various reasons, but erven if they hadn't been, none of them alerted prison officials to Henderson's claims specifically about the deprivation of Islamic or Black-authored publications.

4.  Conclusion

I will grant most of defendants' exhaustion-based summary judgment motion. That leaves Henderson with only his First Amendment free exercise and RLUIPA claims against defendants Perttu, DeGroot, Donovan, and Brooks regarding the denial of Ramadan meals in 2020 and 2021.

B.  Motion for sanctions or hearing

Henderson has filed a motion to sanction defendants or to hold a sanctions hearing on the issue of the prison rejecting and returning Henderson's incoming mail, including court orders. Dkt. 24. This filing appears to be a response to an order I issued in another of

Henderson's cases, No. 21-cv-346-jdp, after an order was returned for Henderson's purported refusal to sign a DOC form in which he would consent to have all incoming mail processed by institution mail services or the DOC's outside vendor. *See* Dkt. 39 in the '346 case.

Henderson filed his motion for sanctions in both this case and the '346 case but it properly belongs in the '346 case. I will deny the motion in this case and I will address it in a forthcoming ruling in the '346 case. The underlying problem with Henderson's mail appears to have been ironed out, as it is clear from Henderson's submissions that he is now receiving court orders and defendants' filings. Out of an abundance of caution I will direct the clerk of court to send Henderson another copy of the two orders in this case that were returned to the court, Dkts. 25 and 28.

In his motion, Henderson also says that defendant Brooks has banned him access to the law library and legal materials in retaliation for him filing this lawsuit. A First Amendment claim for retaliation belongs in a separate lawsuit, but because Henderson is alleging that Brooks is actively blocking him from fully litigating this case, I will address the issue in this lawsuit and give defendants a short time to respond to Henderson's allegations.

ORDER

IT IS ORDERED that:

1. Defendants' motion for partial summary judgment on exhaustion grounds, Dkt. 33, is GRANTED in part.

2. Defendants Radtke, Kind, Matushak, and Frubroht are DISMISSED.

3. Plaintiff Titus Henderson's motion for sanctions or for a hearing, Dkt. 24, is DENIED in part.

4. The clerk of court is directed to send Henderson another copy of the court's orders at Dkts. 25 and 28.

5.  Defendants may have until May 9, 2023, to respond to plaintiff's allegation that he is blocked from using the law library or legal materials. Plaintiff may have until May 23, 2023, to file a reply.

Entered April 25, 2023.

>BY THE COURT:
>
>/s/
>
>_____
>JAMES D. PETERSON
>District Judge